1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Roberto Vargas | CV 12-772-TUC-RM (JR) |
|         Petitioner, | **REPORT AND** |
| vs. | **RECOMMENDATION** |
| Charles L. Ryan, et al., | |
|         Respondents. | |

Pending before the Court is Roberto Vargas's Petition for Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254. In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation. As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

1

1    I.    **FACTUAL AND PROCEDURAL BACKGROUND**

2         Following a trial in Pima County Superior Court, a jury found Vargas guilty of

3    Negligent Homicide, Leaving the Scene of an Accident, Endangerment, and

4    Misdemeanor Driving Under the Influence ("DUI"). Ex. A, pp. 1-2.[1]  The trial court

5    sentenced Vargas to time served on the DUI charge and to several concurrent,

6    presumptive terms of imprisonment, the longest of which was six years, to be

7    followed by three years' probation.  *Id.*, p. 2.

8         In its Memorandum Decision affirming Vargas's convictions, the Arizona

9    Court of Appeals summarized the factual background as follows:[2]

10        On an evening in November 2007, Vargas and a group of
          acquaintances drank numerous pitchers of beer while watching a
11        football game at a bar.  Afterwards, on the way to his home, Vargas
          and three others stopped at a restaurant to order takeout food; while
12        they were waiting, Vargas drank two more beers.  They made one more
          stop at a gas station where they purchased more beer.  Once they
13        reached Vargas's home, the men continued to drink beer.  During this
          time, Vargas's behavior was "uninhibited" and he was wrestling with
14        others in the backyard.

15            Around midnight, Vargas decided to go "offroading" in his Jeep
          and he was joined by M. and V.  The three men bought some more beer
16        at a gas station and rode off into the desert.  Soon thereafter, the Jeep
          overturned, killing V. and injuring M.  When some passing motorists
17        stopped to assist and called the police, Vargas ran away into the desert.
          When he returned home several hours later, his roommates told him the

18    _____

19    [1] Unless otherwise indicated, all exhibit references are to the exhibits attached to the
      Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. 9).
20
21    [2] The factual summary of the Arizona Court of Appeals is accorded a presumption of
      correctness. 28 U.S.C. § 2254(e)(1); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir.
      2009) (citing *Hernandez v. Small*, 282 F.3d 1132, 1135 n. 1 (9th Cir. 2002)).
22

police were looking for him.  Eventually, Vargas agreed to meet with police around 11:00 a.m.  By the time they obtained a sample of his blood, approximately twelve hours had elapsed since the accident, and testing showed Vargas's BAC was .000.

Ex. A, pp. 2-3.

On appeal, Vargas argued that the trial court erred by admitting expert testimony concerning what his BAC could have been at the time of the accident and by failing to exclude sua sponte the parties' stipulation that Vargas had previously attended a MADD Victim Impact Panel.  *Id*., pp. 3-10.  By Memorandum Decision filed on July 29, 2010, the Court of Appeals denied Vargas's appeal on the merits and affirmed the convictions and sentences.  *Id*.  Vargas sought and was granted an extension until September 17, 2010 to file his Petition for Review in the Arizona Supreme Court.  Ex. C.  Vargas never filed his petition and the Court of Appeals issued its Mandate on September 22, 2010.  *Id*.

On May 11, 2011, Vargas initiated state post-conviction relief ("PCR") proceedings with the filing of his pro se PCR petition.  Ex. D.  With the assistance of counsel, Vargas filed another PCR petition, arguing that: (1) his petition should be considered timely because his appellate counsel told him there was no deadline for seeking relief; and (2) his trial and appellate counsel were ineffective for failing to challenge the trial court's jury instruction on the charge of leaving the scene of an accident.  Ex. E, pp. 2-12.    The trial court held a hearing and subsequently, by Minute Entry filed March 21, 2012, denied each of Vargas's claims on the merits.  Ex. F (hearing transcript), Ex. G (minute entry).

3

1    Vargas then petitioned the Arizona Court of Appeals to review his claim that

2 his trial and appellate counsel were ineffective for failing to challenge the trial

3 court's jury instruction on the charge of leaving the scene of an accident.  Ex. H.  By

4 Memorandum Decision filed on September 21, 2012, the Court of Appeals granted

5 review, but denied relief.  Ex. B.  The Court of Appeals noted that it would not

6 disturb the trial court's ruling absent an abuse of discretion.  *Id*., p. 2.  The court then

7 found that even if counsels' performance was deficient, Vargas was not prejudiced.

8 *Id.*, p. 3.  Vargas did not seek review of the Court of Appeals' order by the Arizona

9 Supreme Court.  Ex. I (Mandate).

10    Three days after the trial court denied Petitioner's PCR petition, Vargas

11 attempted to institute another PCR proceeding by filing a delayed notice of PCR.  Ex.

12 J.  On April 12, 2012, the trial court rejected the delayed notice of PCR as untimely.

13 Ex. K.  Vargas did not seek review of the trial court's order.

14    In the petition now before the Court, Vargas raises two claims.  In Ground

15 One, he claims he received ineffective assistance of trial counsel when counsel

16 stipulated that Vargas had attended a "MADD" course, which allowed the jury to

17 conclude that Vargas had a prior DUI conviction.  In Ground Two, he alleges the trial

18 court unreasonably applied United States Supreme Court law when it denied his post-

19 conviction review claim of ineffective assistance of counsel.  *Petition*, pp. 6-9.

20

21

22

## II.      LEGAL DISCUSSION

Respondents argue that Ground One of the Petition is procedurally defaulted and not subject to habeas review.  Additionally, Respondents contend that the state court did not unreasonably apply clearly established federal law in rejecting the Ground Two.

### A.      Exhaustion and Procedural Default: Ground One

A state prisoner must exhaust the available state remedies before a federal court may consider the merits of his habeas corpus petition.  *See* 28 U.S.C. § 2254(b)(1)(A); *Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir.1999).  "[A] petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

Exhaustion requires that a habeas petitioner present the substance of his claims to the state courts in order to give them a "fair opportunity to act" upon these claims.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999).  "To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32," *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then present his claims to the Arizona Court of Appeals.  *See Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir. 1999).

1    Additionally, a state prisoner must not only present the claims to the proper

2    court, but must also present them fairly.  A claim has been "fairly presented" if the

3    petitioner has described the operative facts and federal legal theories on which the

4    claim is based.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v. Wood*, 44

5    F.3d 1396, 1403 (9th Cir. 1995).  "Our rule is that a state prisoner has not 'fairly

6    presented' (and thus exhausted) his federal claims in state court unless he specifically

7    indicated to that court that those claims were based on federal law."  *Lyons v.*

8    *Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), amended on other grounds, 247 F.3d

9    904 (9th Cir. 2001).  A petitioner must alert the state court to the specific federal

10   constitutional guaranty upon which his claims are based, *Tamalini v. Stewart*, 249

11   F.3d 895, 898 (9th Cir. 2001), however, general appeals in state court to broad

12   constitutional principles, such as due process, equal protection, and the right to a fair

13   trial, are insufficient to establish fair presentation of a federal constitutional claim.

14   *Lyons*, 232 F.3d at 669.

15   Moreover, it is not enough that a petitioner presented to the state court all the

16   facts necessary to support an inadequately identified federal claim or that a

17   "somewhat similar" state law claim was raised.  *Baldwin v. Reese*, 541 U.S. 27, 28

18   (2004); *Shumway v. Payne*, 223 F.3d 982, 988 (9th Cir. 2000) (mere similarity

19   between a claim of state and federal error insufficient to establish exhaustion).

20   "Exhaustion demands more than drive-by citation, detached from any articulation of

21   an underlying federal legal theory."  *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th

22   Cir. 2005).

1    Claims may be procedurally defaulted and barred from federal habeas review

2    in a variety of circumstances.  If a state court expressly applied an adequate and

3    independent state procedural bar when the petitioner attempted to raise the claim in

4    state court, review of the merits of the claim by a federal habeas court is barred.  *See*

5    *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).  In Arizona, claims not previously

6    presented to the state courts on either direct appeal or collateral review are generally

7    barred from federal review because any attempt to return to state court to present

8    them would be futile unless the claims fit into a narrow range of exceptions.  *See*

9    *Ariz.R.Crim.P.* 32.1(d)-(h), 32.2(a) (precluding claims not raised on direct appeal or

10   in prior post-conviction relief petitions), 32.4(a) (time bar), 32.9(c) (petition for

11   review must be filed within thirty days of trial court's decision).  Because these rules

12   have been found to be consistently and regularly followed, and because they are

13   independent of federal law, either their specific application to a claim by an Arizona

14   court, or their operation to preclude a return to state court to exhaust a claim, will

15   procedurally bar subsequent review of the merits of such a claim by a federal habeas

16   court.  *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (holding that Ariz.R.Crim.P.

17   32.2(a) is an adequate and independent procedural bar); *Ortiz v. Stewart*, 149 F.3d

18   923, 931-32 (9th Cir. 1998) (Rule 32, Ariz.R.Crim.P. is strictly followed); *State v.*

19   *Mata*, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules strictly

20   applied in postconviction proceedings).

21   In Ground One, Vargas claims that his counsel was ineffective for stipulating

22   to the fact that Vargas had previously attended a MADD victim impact course.

7

1    Respondents contend that the claim was not properly exhausted because Vargas

2    never presented the claim to the state courts. *Answer*, pp. 6-8. Vargas did argue on

3    direct appeal that the trial court erred by failing to sua sponte reject the stipulation,

4    but even Vargas recognizes in his Reply that the claim raised in the state courts did

5    not allege ineffective assistance of counsel. Ex. A; *Reply*, pp. 8-11. Nevertheless,

6    Vargas argues that his failure to exhaust the claim is excused under *Martinez v. Ryan*,

7    132 S.Ct. 1309 (2012). The Court disagrees.

8         In *Martinez*, the Supreme Court held:

9         Where, under state law, claims of ineffective assistance of trial counsel
          must be raised in an initial-review collateral proceeding, a procedural
10        default will not bar a federal habeas court from hearing a substantial
          claim of ineffective assistance at trial if, in the initial-review collateral
11        proceeding, there was no counsel or counsel in that proceeding was
          ineffective.
12

13   *Id*. at 1320. To overcome procedural default under *Martinez*, a habeas petitioner

14   must show: (1) the underlying ineffective assistance of trial counsel claim is

15   substantial; (2) the petitioner had ineffective counsel during the state collateral

16   proceeding; (3) the state collateral proceeding was the initial review proceeding; and

17   (4) state law required the petitioner to bring the claim in the initial review collateral

18   proceeding. *Dickens v. Ryan*, 740 F.3d 1302, 1319 (9th Cir. 2014) (citing *Trevino v.*

19   *Thaler*, 133 S.Ct. 1911, 1918 (2013)).

20        To conclude that a claim of ineffective assistance is "substantial" under

21   *Martinez*, the Court must determine whether the claim has "some merit." *Martinez*,

22   132 S.Ct. at 1318. "Substantiality" exists where the petitioner can show that

8

"reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Detrich v. Ryan*, 740 F.3d 1237, 1245 (9th Cir. 2013). Simply put, if Vargas's claim of ineffectiveness of trial counsel is insubstantial, then there could not be a reasonable probability that the result of the post-conviction proceedings would have been different had his counsel raised the claim. *See Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014) ("To demonstrate that there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different, it will generally be necessary to look through to what happened at the trial stage."). Thus, the Court must consider whether Vargas's claim of ineffective assistance of PCR counsel has any merit.

While the state court did not address this claim as one involving ineffective counsel, as noted above, on direct appeal Vargas asserted that the trial court erred by failing to sua sponte reject the stipulation that Vargas had attended the MADD class. In evaluating and rejecting the claim on the merits, the Arizona Court of Appeals assumed, as Vargas asserted then and now, that "the jury would have understood the stipulation to mean that Vargas had a prior DUI conviction . . . ." Ex. A, p. 8. The court then noted that "the stipulation demonstrated Vargas's knowledge of the dangers of drinking and driving, which was relevant to whether he had acted recklessly, an element of the charged crimes of manslaughter and endangerment." *Id.*, p. 9 (citing A.R.S. §§ 13-1103(A)(1) and 13-1201). As such, the court concluded

9

1   that the evidence was properly admitted under Rule 404(b) of the Arizona Rules of

2   Evidence because it allowed jurors to reasonable conclude that Vargas was aware of

3   the risks he posed to others by driving under the influence and thus was relevant to

4   the element of recklessness, an element of the charged crimes of manslaughter and

5   endangerment.  *Id.*, p. 9 (citations omitted).

6       In light of this ruling on direct appeal, and the authorities upon which it

7   relied, it is clear that the claim, even when recast as one of ineffective assistance of

8   counsel, does not satisfy the "substantiality" requirement under *Martinez*.  The

9   analysis of the Arizona Court of Appeals establishes that the MADD evidence was

10  properly admitted under Rule 404(b).  Thus, the prosecution was not required to

11  obtain the stipulation from Vargas's trial counsel before the evidence could be heard

12  by the jury.  In fact, the Court of Appeals noted, and Vargas does not contradict, that

13  the trial court had "informally indicated" it would allow testimony from a victim

14  impact panelist about the MADD training.  For this reason alone, Vargas's claim

15  fails.  *See, e.g., James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) (finding no prejudice in

16  trial counsel's failure to raise futile objection to jury instruction).  Moreover, given

17  that the trial court had indicated it would allow live testimony on the issue, Vargas's

18  trial counsel's efforts in entering into the stipulation worked in Vargas's favor by

19  avoiding the live testimony and agreeing to substitute the likely less damning

20  stipulation that Vargas had attended the training.

21      With the state court's decision on direct appeal, Vargas's PCR counsel had

22  available to him the appeals court's analysis of the propriety of the admission of the

1   MADD evidence.   Other than arguing that the prejudicial effects of the evidence
2   outweighed its probative value, an argument rejected by the Arizona Court of
3   Appeals, Vargas offers no legal authority to support his contention that his PCR
4   counsel was ineffective for not raising the claim.   Thus, because PCR counsel was
5   presumably aware that the appeals court had previously found that the MADD
6   evidence was admissible even without the stipulation of Vargas's trial counsel,
7   reasonable jurists cannot debate whether the outcome of Vargas's PCR petition
8   would have differed had the claim been included.   *See Detrich*, 740 F.3d at 1245.
9   Because the claim is not a substantial one, Vargas's failure to exhaust is not excused
10  by *Martinez*.

11          Any attempt by Vargas to return to state court to present Ground One would
12  be futile because it would be procedurally barred pursuant to Arizona law. See
13  Ariz.R.Crim.P. 32. 1, and 32.2(a) and (b); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th
14  Cir. 2002) (a state post-conviction action is futile when it is time-barred); *State v.*
15  *Mata*, 916 P.2d 1035, 1048–53 (Ariz. 1996); Ariz.R.Crim.P. 32.1(a)(3) (relief is
16  precluded for claims waived at trial, on appeal, or in any previous collateral
17  proceeding); Ariz.R.Crim.P. 32.4(a) (notice of post-conviction review "must be filed
18  within ninety days after the entry of judgment and sentence or within thirty days after
19  the issuance of the order and mandate in the direct appeal, whichever is the later");
20  Ariz.R.Crim.P. 32.9 (petition for review must be filed within thirty days of trial
21  court's decision).   Because no state remedies are currently available, Vargas's claim
22  is technically exhausted and procedurally barred. *See Coleman v. Thompson*, 501

11

1   U.S. 722, 732, 735 n. 1 (1991), *overruled on other grounds by Martinez*, 132 S.Ct. at

2   1315.

3       **B.**    **Merits: Ground Two**

4         Under the AEDPA, a federal court "shall not" grant habeas relief with respect

5   to "any claim that was adjudicated on the merits in State court proceedings" unless

6   the state decision was (1) contrary to, or an unreasonable application of, clearly

7   established federal law as determined by the United States Supreme Court; or (2)

8   based on an unreasonable determination of the facts in light of the evidence presented

9   in the State court proceeding.   28 U.S.C. § 2254(d).   *See Williams v. Taylor*, 120

10   S.Ct. 1495 (2000).  A state court's decision can be "contrary to" federal law either (1)

11   if it fails to apply the correct controlling authority, or (2) if it applies the controlling

12   authority to a case involving facts "materially indistinguishable" from those in a

13   controlling case, but nonetheless reaches a different result.  *Van Tran v. Lindsey*, 212

14   F.3d 1143, 1150 (9th Cir. 2000).   In determining whether a state court decision is

15   contrary to federal law, the court must examine the last reasoned decision of a state

16   court and the basis of the state court's judgment.  *Packer v. Hill*, 277 F.3d 1092, 1101

17   (9th Cir. 2002).  A state court's decision can be an unreasonable application of federal

18   law either (1) if it correctly identifies the governing legal principle but applies it to a

19   new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails

20   to extend a clearly established legal principle to a new context in a way that is

21   objectively unreasonable.  *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

22

In Ground Two, Vargas claims that the jury instruction on the charge of leaving the scene of an accident was inconsistent with the statute and that his counsel was ineffective for failing to challenge the instruction on those grounds.  The operative legal standard applicable to this claim is a familiar one, addressed by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  The standards enunciated there by the Court are applied unless there is other Supreme Court precedent directly on point.  *See Wright v. Van Patten*, 128 S.Ct. 743, 746 (2008).  Under *Strickland*, Vargas must show both deficient performance and prejudice in order to establish that counsel's representation was ineffective.  *Strickland*, 466 U.S. at 687.  Deficient performance is established by a petitioner's showing that counsel's performance fell below an objective standard of reasonableness.  *Hill*, 474 U.S. at 57 (citing *Strickland*, 466 U.S. at 688).  To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Cooper*, 132 S.Ct. at 1384 (citing *Strickland*, 466 U.S. at 694).

Federal habeas rules also instruct that, if the state court has already rejected a claim of ineffective assistance of counsel, a federal habeas court may grant relief only if it finds the state court's decision was contrary to, or an unreasonable application of the *Strickland* standards.  *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  The review of counsel's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged decision or conduct, in order to avoid the distorting effects of hindsight.  *Strickland*, 466 U.S. at 689.  There

13

is a strong presumption that counsel's conduct falls within the wide range of reasonable assistance, *id.,* and the Supreme Court had described federal review of a state court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112-113 (2009)).

The Arizona statutes pursuant to which Vargas was found guilty for leaving the scene of an accident involving injury or death require that the driver of a vehicle involved in such an accident:

> 1.    Immediately stop the vehicle at the scene of the accident or as close to the accident as possible but shall immediately return to the accident scene.
>
> 2.    Remain at the scene of the accident until the driver has fulfilled the requirements of § 28-663.

A.R.S. § 28-661(A).  In relevant part, A.R.S. § 28-663 requires that the driver:

> 1.    Give the driver's name and address and the registration number of the vehicle the driver is driving.
>
> 2.    On request, exhibit the person's driver license to the person struck or the driver or occupants of or person attending a vehicle collided with.
>
> 3.    Render reasonable assistance to a person injured in the accident, including making arrangement for the carrying of the person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if the carrying is requested by the injured person.

A.R.S. § 28-663(A).

1    The trial court's jury instruction on the charge of leaving the scene did not

2   reference or list the requirements of § 28-663.  Instead, the jury was instructed as

3   follows:

4          A person commits leaving the scene of a serious physical injury or fatal
           accident if:
5
           1.    The defendant was driving a vehicle involved in an accident
6          resulting in serious physical injury to or death of any person; and

7          2.    The defendant failed to stop at the scene or as close as possible
           and immediately return; and
8
           3.    The defendant failed to remain at the accident scene until he
9          fulfilled the duty to give information and render aid as required by law.

10   Final Instructions, Court's Instruction No. 16, Ex. G.

11    Vargas contends that by failing to specify the requirements outlined in § 28-

12   663, the instruction "mislead the jury into thinking that A.R.S. § 28-661 must be

13   taken to mean that [Vargas] had committed a crime simply by leaving the accident

14   scene." *Petition*, p. 12.[3]  In his Reply, Vargas explains that he complied with the first

_____

16   [3] The Court notes that issues regarding jury instructions usually present questions of
17   state law only and are not subject to federal habeas corpus review.  *Estelle v.
     McGuire*, 502 U.S. 62, 71–72 (1991).  A challenged jury instruction requires habeas
18   relief only if the instruction by itself so infected the entire trial that the resulting
     conviction violates due process.  *Estelle*, 502 U.S. at 72; *Boyde v. California*, 494
19   U.S. 370, 378 (1990) (citation omitted).  A federal habeas court must determine
     whether there is a reasonable likelihood that the jury has applied the challenged
20   instruction in a way that violates the Constitution.  *Estelle*, 502 U.S. at 63.  As
     explained in the ensuing discussion, the trial court and the Arizona Court of Appeals
21   reasonably determined that Vargas was not prejudiced by the instruction.  As such,
     there is no likelihood the challenged instruction violated the Constitution.

22

1   two provisions of A.R.S. § 28-663 because the uninjured passenger that he left

2   behind when he ran knew his name and address, that his Jeep could be used to

3   identify him, and that "the third provision was moot given that the victim was dead."

4   *Reply*, p. 5.

5          After an evidentiary hearing held in Vargas's PCR proceedings, the trial court,

6   applying the standards set forth in *Stickland*, found that the jury instruction was

7   incomplete because it "omits the requirements specified in A.R.S. § 28-663 and

8   replaces them with the general phrase 'as required by law,' and that there was no

9   strategic basis for Vargas's counsel's failure to object to the instruction. Ex. G, pp.

10  4-5. However, applying *Strickland's* second prong, the trial court then concluded

11  that Vargas suffered no prejudice. As the trial court explained:

12         Defendant argues that he was essentially in compliance with the[]
           requirements [of A.R.S. § 28-663] or that they did not apply to him
13         under the circumstances of the accident for the following reasons:
           Defendant's Jeep and his friend remained at the scene, and therefore
14         information about Defendant's identity was easily accessible;
           Defendant's departure was not intended to conceal his identity and he
15         could not conceal his identity by leaving; and because the only
           seriously injured person was already dead, there was not possible
16         assistance to be rendered and therefore no duty to remain at the scene
           in order to render assistance.

17
           Defendant is mistaken that these circumstances would have
18         made his behavior seem to the jury, or to any member of the jury, to be
           compliant with any of the requirements of A.R.S. § 28-663. The statute
19         does not require that a person stay at the scene and provide information
           *unless the information could be easily acquired in a different fashion*.
20         The requirement is clearly for the person, himself or herself, to stay and
           provide the required information. Leaving his vehicle and his friend at
21         the scene cannot be construed as providing information about his name,
           vehicle registration or driver license. Defendant's vehicle was left at
22         the scene because it was turned over, and Defendant's friend remained

16

at the scene until the authorities arrived because he chose to do so. Defendant could not discharge the statutory requirements in this fashion.

There was testimony both from Defendant's friend and the female passer-by who called 911 that Defendant left <u>without providing any information</u>.  The woman testified that while she was on the phone with the 911 operator, she observed Defendant walking down the road away from the scene of the accident.  Transcript of proceedings, Jury Trial- Day 3, p. 11.  The surviving passenger testified that after pulling their dead friend out of the vehicle, Defendant said, "got to get out of here . . . we got to get out of here," and then left.  Transcript of proceedings, Jury Trial – Day 2, p. 81.

While falling short on specifying the particular information required to be given and the kind of aid required to be rendered by a driver involved in an accident, the jury instruction given at Defendant's trial nonetheless correctly informed the jury that the law required Defendant to give information and render aid.  There could hypothetically be a case where the sufficiency of information provided or aid rendered could be an issue.  In such a case, the jury instruction given at Defendant's trial would be prejudicial.  However, Defendant's case is different.  Defendant's argument now that his actions could be seen as compliant with the statutory requirements is without merit. Defendant did not give *any* information prior to leaving.  Whether the information could have been acquired in some other way is irrelevant to the statutory requirement.  Further, making an argument in front of the jury that Defendant was not trying to escape criminal liability by his departure from the scene would not have been persuasive.  There was strong evidence to suggest the Defendant was under the influence of alcohol at the time of the accident and left specifically to avoid his blood or breath alcohol level being tested closer to the time of the accident. Defendant's alcohol concentration was tested the following morning when Defendant self-reported to the police, when there was no alcohol detectable in his system.

Defendant argues that the statute does not require a person to stay at the scene of an accident until the police arrive, but that the jury instruction at Defendant's trial implied exactly that Defendant was required to stay at the scene until the police arrived in order to provide them with information.  Petition for Post-Conviction Relief, p. 8. While the statute seems to have been drafted mainly with a vehicle collision resulting in an injury in mind (it references "vehicle collided

17

with" and "person inured in the accident"), it cannot be read, as Defendant implies, to be inapplicable to instances involving a single car accident where a passenger dies.  In a case such as this, the police would likely be the first entity attending to the dead person, and the police would have been the entity who needed Defendant's information.  The statute could reasonably be read to require that in an accident such as this, Defendant was to wait until the police arrived, and provide them with the requested information.

Defendant's argument now that there was no assistance that could have been rendered to the already dead passenger is misplaced.  The requirement to remain at the scene of an accident and give information applies equally to accident involving injury or death.

Ex. G, pp. 4-7.  On appeal, the Arizona Court of Appeals assumed without deciding that the trial court's determination that Vargas's counsel was performance was deficient was correct.  Ex. B, p. 3.  The Court of Appeals then proceeded to adopt the trial court's analysis of the prejudice prong of *Strickland* and concluded there was no basis for disturbing the trial court's ruling.  Ex. B, pp. 3-4.

As the Arizona Court of Appeals concluded, the Court here finds that the trial court's analysis easily satisfies the standards applicable to the analysis of IAC claims in habeas proceedings.  Vargas does not attempt to explain how or why the trial court's analysis or the Court of Appeals' decision could be characterized as contrary to, or an unreasonable application of the *Strickland* standards.  *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  Vargas merely reiterates the arguments he made before those courts.  However, the trial court's analysis of those arguments was well-reasoned and cannot be improved upon by this Court.  Vargas simply has not established "a reasonable probability that, but for counsel's unprofessional errors, the

1  result of the proceeding would have been different."  *Strickland*, 466 U.S. at 687-94.

2  It is therefore recommended that this claim be denied.

3  **III.      RECOMMENDATION**

4         Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the

5  District Court, after its independent review, **deny** Vargas's Petition for Writ of

6  Habeas Corpus (Doc. 1).

7         This Recommendation is not an order that is immediately appealable to the

8  Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1),

9  Federal Rules of Appellate Procedure, should not be filed until entry of the District

10  Court's judgment.

11         However, the parties shall have fourteen (14) days from the date of service of

12  a copy of this recommendation within which to file specific written objections with

13  the District Court.  *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the

14  Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen (14) days

15  within which to file a response to the objections.  Replies shall not be filed without

16  first obtaining leave to do so from the District Court.  If any objections are filed, this

17  action should be designated case number: **CV 12-0772-TUC-RM**.  Failure to timely

18  file objections to any factual or legal determination of the Magistrate Judge may be

19  . . . .

20  . . . .

21  . . . .

22

considered a waiver of a party's right to *de novo* consideration of the issues. *See*

*United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (*en banc*).

Dated this 24th day of November, 2014.

Jacqueline M. Rateau
United States Magistrate Judge